## WESTERN COMMUNICATIONS, INC.,
dba The Bulletin,
*Respondent - Cross-Appellant,*

*v.*

## DESCHUTES COUNTY, OREGON,
*Appellant - Cross-Respondent,*

*and*

## KLUG-RAINEY, INC.,
dba The Inn of the Seventh Mountain,
*Intervenor-Appellant - Cross-Respondent.*

(87-CV-0403-WE; CA A48793)

788 P2d 1013

Karen H. Green, Assistant Legal Counsel, Bend, argued the cause and filed the brief for appellant - cross-respondent Deschutes County. Appearing on the brief *amicus curiae* were William F. Hanlon, Jefferson County, Madras, Mike Spencer, Klamath County, Klamath Falls, Wayne Belmont, Lincoln County, Newport, and Paul Mackey, Multnomah County, Portland.

Stephen F. Crew, Portland, argued the cause for intervenor-appellant - cross-respondent. With him on the brief was O'Donnell, Ramis, Elliott & Crew, Portland.

Jacob Tanzer, Portland, argued the cause for respondent - cross-appellant. With him on the brief was Ball, Janik & Novack, Portland.

Before Graber, Presiding Judge, and Joseph, Chief Judge, and Riggs, Judge.

RIGGS, J.

Joseph, C. J., dissenting in part; concurring in part.

**RIGGS, J.**

Defendant and intervenor appeal a judgment under the Public Records Act (the Act). ORS 192.410 to ORS 192.505. The trial court ordered defendant county to disclose to plaintiff, the publisher of the Bend *Bulletin,* the ledger cards on which the county records monthly transient room tax payments from each lodging operator in the unincorporated portions of the county. Klug-Rainey, Inc. (Klug-Rainey), which operates a large resort in unincorporated Deschutes County, intervened as a defendant in order to support the county's refusal to disclose the cards. Plaintiff cross-appeals the trial court's refusal to award it attorney fees against Klug-Rainey as well as against the county. Because of a change in the applicable law while we have had the case under advisement, we vacate the trial court's decision and remand for further proceedings.

■ The county imposes a tax on each transient who rents housing from a lodging operator in its unincorporated area.[1] Deschutes County Code § 4.08.030. The taxes that lodging operators receive in one month are due on the 15th of the next month and are delinquent at the end of that month. There are various penalties for late payment and for fraud. Deschutes County Code §§ 4.08.090 to 4.08.120. Because the tax is a fixed percentage of the rent for the lodging, a person who knows the amount of tax that an operator received for a particular month can easily compute that operator's gross income from lodging for that month. The ordinance makes it unlawful for anyone involved in the administration of the tax to disclose "the amount of [*sic*] source of income, profits, losses, expenditures or any particular thereof, set forth in any statement * * *." Deschutes County Code § 4.08.260.[2]

The county tax collector maintains ledger cards for each operator, on which she records the month, the amount of tax received and the receipt number. Plaintiff seeks disclosure of those cards. Although plaintiff states that it does not seek

---

[1] Bend, Redmond and Sisters, the three incorporated cities within the county, levy similar taxes on transient lodging within their boundaries.

[2] The ordinance does not explicitly prohibit the disclosure of the amount of tax that each operator collected and paid, and it is so worded that it is not entirely clear that that is its effect. The parties assume that the ordinance prohibits disclosure of that information.

the statements of gross rentals that the operators also submit with the returns, disclosure of the ledger cards in reality would be the disclosure of the rentals. The cards are public records of a public body. ORS 192.410(1), (4). "Every person has a right to inspect any public record of a public body in this state, *except as otherwise expressly provided* by ORS 192.501 to 192.505." ORS 192.420. (Emphasis supplied.) In the trial court and in their briefs on appeal, county and Klug-Rainey relied on three statutory exemptions to justify the county's refusal to disclose the ledger cards. However, the 1989 legislature, in response to this litigation, adopted a new exemption that, we hold, now controls this case.[3]

Oregon Laws 1989, chapter 925, section 1, amended ORS 192.502 to add subsection 16, which exempts from the disclosure requirements of ORS 192.420:

"Records, reports or returns submitted by private concerns or enterprises required by law to be submitted to or inspected by a governmental body to allow it to determine the amount of any transient lodging tax payable and the amounts of such tax payable or paid, to the extent that such information is in a form which would permit identification of the individual concern or enterprise. Nothing in this subsection shall limit the use which can be made of such information for regulatory purposes or its admissibility in any enforcement proceedings. The public body shall notify the taxpayer of the delinquency immediately by certified mail. However, in the event that the payment or delivery of transient lodging taxes otherwise due to a public body is delinquent by over 60 days, the public body shall disclose, upon the request of any person, the following information:

"(a) The identity of the individual concern or enterprise that is delinquent over 60 days in the payment or delivery of the taxes.

"(b) The period for which the taxes are delinquent.

"(c) The actual, or estimated, amount of the delinquency."

The legislature intended that that provision apply to

---

[3] We do not decide whether the exemptions that the trial court considered would be applicable to any material that is not exempt from disclosure under ORS 192.501(16) or whether the trial court's rulings with regard to the exemptions were correct.

this case. The bill originated in the Senate, but the crucial action took place in the House Judiciary Committee. Senator Fawbush, whose district included Deschutes County, was the first witness to discuss the bill. In his written testimony, he stated:

> "Last year, the Bend Bulletin newspaper sued Deschutes County for access to individual room tax revenue figures, and the Court ruled in favor of the Bulletin. While the court felt that the lodging industry and Deschutes County made a good case for the proprietary nature of such information, it ruled that the existing Public Disclosure Law provides only that the 'public interest' be considered, unless specifically exempt.

> "It is extremely important that this information be kept confidential. While it is of no apparent interest to the general public the release of such information could be very damaging to the individual lodging establishments by creating an unfair competitive advantage.

> "I believe that it is important to keep this information confidential, as are most other forms of business and personal income. SB 721 would 'fix' the statute to address the Court's interpretation, and offer the protection that I believe was and is intended by state and local government." House Committee on the Judiciary, Subcommittee on Civil Law and Judicial Administration, Minutes, May 15, 1989, p 2 and Exhibit A.

After Senator Fawbush's testimony, Steven Crew, legal counsel for the Oregon Lodging Association, at whose request Senator Fawbush introduced the bill, testified. The minutes summarize a colloquy with a committee member:

> "Rep. Mannix:  Assumes case is pending?

> "Crew:  It is on appeal.

> "Rep. Mannix:  Wouldn't emergency clause be good in bill, retroactive clause?

> "Crew:  Yes." House Committee on the Judiciary, Subcommittee on Civil Law and Judicial Administration, Minutes, May 15, 1989, p 3.

The Committee thereafter added an emergency clause to the bill. Or Laws 1989, ch 925, § 2.

Our role in construing a statute is to determine the legislature's intent. ORS 174.020. Deciding the effect that the legislature intended a change in the law to have on events that have already occurred may be a difficult matter. It requires

careful attention to the legislative purpose, not the application of so-called rules of statutory construction or even the assumption that the same words will always have the same legal effect. *See Whipple v. Howser,* 291 Or 475, 632 P2d 782 (1981). "The question of the so-called 'retroactive' or 'retrospective' effect of a new law is not, or should not be, a question of adjudication. Its answer is not to be sought in judicial precedents. 'Retroactivity' is in the first instance a question of legislative draftsmanship." 291 Or at 488 (Linde, J., concurring). In this case we must decide what the legislature intended when it declared that ORS 192.502(16) "takes effect on its passage." Or Laws 1989, ch 925, § 2.

It may well be that in most cases an emergency clause does not express a legislative intent to apply a new law to previous events. There is no doubt, however, that *this* emergency clause expressed the legislature's intent that the amendment to ORS 192.502 govern *this* litigation. Senator Fawbush introduced the bill in order to overcome the trial court's decision in this case. Thereafter, another witness told the committee that this case was on appeal. A representative immediately suggested adding an emergency clause to the bill in order to ensure that the change would be retroactive and would thereby control this case. The committee added such a clause, and the bill became law with that change. Although the legislature may not have chosen the best vehicle to achieve its purpose, there is no question of what it intended to accomplish by the vehicle that it did choose. It wanted a different result in this case from the one that the trial court had reached.[4]

We follow the legislature's intent and hold that ORS 192.502(16) governs our decision. It supersedes the exemptions on which defendants previously relied. As a result, most of the information that plaintiff sought now appears to be exempt from disclosure. However, the parties did not try the case with reference to the new criteria for determining what the County must disclose, and we cannot determine from the present record which, if any, requested items may not be

---

[4] The dissent seems not to understand how the Oregon legislature functions. Because it generally decides issues in committees rather than on the floor, the dissent's approach would deny the possibility of ever analyzing legislative history to discover the legislative intent. That is not how the Supreme Court views the matter. *See, e.g., State ex rel Cox v. Davidson Ind.,* 291 Or 839, 844, 635 P2d 630 (1981).

exempt. The trial court must decide that issue on remand. After doing so, it will also be able to decide whether plaintiff is entitled to attorney fees under ORS 192.490(3) and, if so, for what part of the case.

■     Because the issue may arise on remand, we consider plaintiff's cross-appeal. Plaintiff argues that Klug-Rainey, as an intervening defendant, should be liable for attorney fees along with the county.[5] It argues that, when the trial court, over plaintiff's objections, allowed Klug-Rainey to intervene, Klug-Rainey became a full party to the case and made itself as liable for fees as was the county.

■     The correctness of plaintiff's argument depends on the statute. ORS 192.490(3) provides:

> "If a person seeking the right to inspect or to receive a copy of a public record prevails in the suit, the person shall be awarded costs and disbursements and reasonable attorney fees at trial and on appeal. If the person prevails in part, the court may in its discretion award the person costs and disbursements and reasonable attorney fees at trial and on appeal, or an appropriate portion thereof. If the state agency failed to comply with the Attorney General's order in full and did not issue a notice of intention to institute proceedings pursuant to ORS 192.450(2) within seven days after issuance of the order, or did not institute the proceedings within seven days after issuance of the notice, the petitioner shall be awarded costs of suit at the trial level and reasonable attorney fees regardless of which party instituted the suit and regardless of which party prevailed therein."

The underlying assumption in the statute is that the public body will be the party responsible for an attorney fee award. It would make no sense, for instance, to award attorney fees against a private intervenor simply because a state agency failed to file an action within the required time, even if the court ultimately held that the agency's refusal to disclose was proper. The rights involved are public rights, and the body responsible for compliance is a public body. A private entity has no right to require the public body to withhold the records, even if they are exempt from disclosure. *See Portland Adventist Medical Center v. Sheffield,* 303 Or 197, 199 n 2, 735 P2d

---

[5] Plaintiff does not seek an increase in the fees that the trial court awarded, only that Klug-Rainey share liability for that amount with the county.

371 (1987). Intervention by a private party to defend the refusal to disclose, assuming that it is permissible, does not change the nature of the case or the fact that the ultimate decision whether to withhold disclosure is the sole responsibility of the public body.

Plaintiff cites no case authority to support its argument that Klug-Rainey should be liable for the fees. At the trial court it relied in part on *Charles v. Daley,* 846 F2d 1057 (7th Cir 1988), in which the court awarded fees under 42 USC § 1988 against private parties who had intervened to defend an Illinois abortion statute that the plaintiffs had challenged. In *Charles,* however, the intervenors did not simply participate with the state in defending the statute; in many respects they took over the litigation. The state simply adopted the briefs, motions and other papers that the intervenors filed, and the intervenors successfully sought Supreme Court review of an adverse Court of Appeals decision after the state declined to do so. A large part of the attorney fees awarded against the intervenors was for the Supreme Court phase of the case, in which the state was not involved. 846 F2d at 1064-1065.

In this case, although Klug-Rainey actively participated in the trial and the appeal, its involvement was not like that of the intervenors in *Charles v. Daley, supra.* The trial court did not err in refusing to award fees against Klug-Rainey.

Vacated and remanded on appeal; affirmed on cross-appeal.

**JOSEPH, C. J.,** dissenting in part; concurring in part.

The majority wins, and permanently retires, the Circulating Award for Most Creative (and Absurd) Use of Legislative History. It says: "The legislature intended that [the amendment of ORS 192.502 by Or Laws 1989, ch 925, § 1] apply to this case." 100 Or App 710. If the legislature had expressed itself explicitly, we would not have this dispute. All that the majority is able to cite as proof of legislative intent is the ambiguous testimony of the senator who sponsored the amendment and the apparently confused response by a representative who was a member of the committee. Even on that

record, it is notable that the representative referred to an "emergency clause" *and* a "retroactive clause."[1]

I hope that I will always be able to apply the words that the legislature actually uses and avoid the temptation to read committee testimony involving one witness and one legislator as the intention of 59 other representatives and 30 senators. What the legislature clearly and unambiguously *did* was to add *only* an emergency clause. That leaves no room for result-oriented rewriting of the legislation. The legislator on whom the majority relies apparently knew more about the meaning (and non-meaning) of an emergency clause than the majority does. *Compare State ex rel Cox v. Davidson,* 291 Or 839, 844, 635 P2d 630 (1981).

The majority uses that addition by the committee as a bootstrap to lift itself into a position of being entitled to look for the legislature's intent in doing something or other. What the majority sees as "something or other" is not very clear. What *is* clear is that, if the majority were to apply what it contemptuously refers to as "so-called rules of statutory construction or even the assumption that the same words will always have the same legal effect," 100 Or App at 712, it would find itself in deep, deep trouble. Instead, it enters into paying "careful attention to the legislative purpose." 100 Or App at 712. It acknowledges that "in most cases an emergency clause does not express a legislative intent to apply a new law to previous events." 100 Or App at 712. To be sure, in *no* case has the Supreme Court, or this court, *ever* held that an emergency clause expresses a legislative intent that a new law determine the consequences of completed events.

As we cogently said in a different context:

"By [reason of the emergency clause] the provision changing the scope of review 'first bec[a]me operative January 1, 1988.' * * * Although petitioner argues strenuously in his memorandum that the statute is ambiguous when applied to this case, that is just not so. The language of the statute unambiguously expresses the intent of the legislature that [the new law apply only to cases coming to this court after a certain

---

[1] The majority also cheats. After quoting the legislator's reference to "emergency clause * * * retroactive clause," which are different clauses, it describes him as suggesting "adding an emergency clause * * * in order to ensure that the [amendment] would be retroactive." 100 Or App at 711, 712.

date]. There is, therefore, no need to resort to canons of statutory construction or to legislative history * * * to determine the intent of the legislature. * * * Because '[t]he words used speak for themselves,' *Barry Transport, Inc. v. Heltzel,* 202 Or 161, 167, 272 P2d 965 (1954), we need only look to the plain meaning of the statute to determine whether the substantial evidence review standard applies. It applies in this case." *Armstrong v. Asten-Hill Co.,* 90 Or App 200, 203, 752 P2d 312 (1988).

In other words, an emergency clause declares exactly what the Oregon Constitution says that it does. If the legislature wants a statute to affect past events, it can and should say so. We should not make ourselves look ludicrous in order to do something that the legislature could have done simply but did not do at all.[2]

I agree with the majority in upholding the trial court's refusal to award fees against Klug-Rainey, the intervenor.

---

[2] As Justice Scalia put it, concurring in *INS v. Cardoza-Fonseca,* 480 US 421, 453, 107 S Ct 1207, 94 L Ed 2d 434 (1987):

"Judges interpret laws rather than reconstruct legislators' intentions. Where the language of those laws is clear, we are not free to replace it with an unenacted legislative intention."

In another case, *United States v. Taylor,* 487 US 326, 345, 108 S Ct 2413, 101 L Ed 2d 297 (1988), Justice Scalia, again concurring, expressed the thought in a way clearly *apropos* this case:

"The text is so unambiguous * * * that it must be assumed that what the Members of the House and Senators thought they were voting for, and what the President thought he was approving when he signed the bill, was what the text plainly said, rather than what a few Representatives, or even a Committee Report, said it said. Where we are not prepared to be governed by what the legislative history says—to take, as it were, the bad with the good—we should not look to the legislative history at all. This text is eminently clear, and we should leave it at that."